UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Muhammad Hanif,                          Case No. 13-61977-MBM
                                               Chapter 7
                 Debtor.                       Hon. Marci B. McIvor
_____/

Margaret Chudzinski,

                 Plaintiff,

v.                                             Adv. Pro. No. 14-4246

Muhammad Hanif,

                 Defendant.
_____/

## OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions to dismiss and/or for

summary judgment. Plaintiff/creditor Margaret Chudzinski seeks summary judgment on a three

count complaint for nondischargeability. Plaintiff's claims arise from an unsuccessful business

deal with defendant/debtor Muhammad Hanif. Defendant Muhammad Hanif's Motion asserts

that Plaintiff's claims under § 523(a)(2) and (a)(4) (Counts I and II) should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6), and requests that summary judgment be granted in favor of

Defendant on Count III of the Complaint (brought under § 523(a)(6)). Both Plaintiff and

Defendant argue that the doctrine of collateral estoppel precludes further litigation of matters

already considered by a state court. For the reasons stated in this Opinion, Plaintiff's Motion for

Summary Judgment is granted.

# I. <u>Facts</u>

This case arises out of the formation and operation of Home Health Care Connections, LLC (hereinafter "HHCC"). HHCC was incorporated under Michigan law in 2009. Based on an affidavit filed by Plaintiff in her lawsuit in Washtenaw County Circuit Court, Plaintiff formed HHCC on April 21, 2009 to provide home health care services, including nursing, physical and occupational therapy, social work and home health aides. She obtained an IRS employer I.D. number, applied for a National Provider Identifier number, executed a three-year commercial lease (expiring in June, 2012) at 2925 E. Michigan Avenue in Ypsilanti, retained an architect to build out the space and made the initial lease payments. (Plaintiff's Affidavit is filed in this case as Exhibit 1 to Docket No. 28, hereinafter "Pl. Aff. ¶ _").

At some point in the spring of 2009, Plaintiff met with Defendant regarding joining together to operate HHCC. Generally, Plaintiff would be responsible for the day to day operations and Defendant would provide financial resources. (Pl. Aff. ¶¶ 5, 6).

On December 15, 2009, Plaintiff and Defendant executed an Operating Agreement for HHCC (hereinafter "the Agreement," attached to Defendant's Motion for Summary Judgment as Exhibit 5A). Generally, the Agreement provided that Defendant was to invest $50,000 "for initial form up and running expenditures of the company" and would "be sole owner of the company until this amount is paid in full by the company. After the payment is made to Mr. Hanif, then his ownership interest will be 50% in the company." The rest of the ownership would transfer to the other members. "However, other members will be entitled to receive 50% of the profit of the company as and when it is running." (Agreement section 3.5).

Pursuant to the Agreement, Plaintiff was to work "full time in directing the operation of

the business" and be paid for that work. (Agreement section 7.4). Defendant was to assist "as managing employee" and would also be paid. (Agreement section 7.4).

Pursuant to the Agreement, Defendant was "responsible for depositing a sum of $70,000 to the Company's account pending certification of the Company by the Centers for Medicare and Medicaid services ("CMS") as a home heath care organization." Those funds would be withdrawn when the application was approved and the certification process was complete. (Agreement section 3.5).

On December 15, 2009, Plaintiff introduced Defendant to a consultant who assisted HHCC with the certification process. That certification was expected to take 9 months. (Plaintiff's State Court Complaint ¶ 15, hereinafter "St.Ct.C. ¶ __").

Initially, after the Agreement was signed, Plaintiff continued to manage the day to day operations of the business. "Soon thereafter," Defendant informed her that his son was critically ill and that he could not, at that time, fulfill his obligations under the Agreement. HHCC's operations were put on hold. (St. Ct. C. ¶¶ 17; Pl. Aff. ¶¶ 11-12).

Plaintiff accepted a position as an administrator with Advance Home Health Care Services, Inc. and worked there throughout 2010. (St. Ct. C. ¶ 18). Plaintiff attempted to contact Defendant on several occasions during 2010 in an effort to determine when HHCC operations could recommence, but her calls were not accepted or returned. (St.Ct.C. ¶ 21; Pl. Aff. ¶ 14).

In February, 2011, Plaintiff received a letter from Tariq Hafeez, an attorney representing Defendant. That letter stated "that Ms. Chudzinski had failed to meet her obligations under the Operating Agreement" and that he and Defendant "consider the Operating Agreement as void and rescinded and do not recognize any ownership interest or any other proprietary interest, right

3

to proceeds, [or] right to revenues on the part of Ms. Chudzinski." (Pl. Aff. ¶ 16)

In October, 2012, pursuant to the terms of the Agreement, Plaintiff sought to obtain copies of HHCC's financial statements and tax returns, board minutes, and records relating to distributions. Defendant refused to provide the information. (St.Ct.C. ¶¶ 24, 25; Pl.Aff.¶ 17).

On December 18, 2012, Plaintiff filed a five-count civil action against Defendant in state court (*Chudzinski v. Home Health Care Connections, LLC and Muhammad Hanif*, case no. 12-1328-CB, Washtenaw County Circuit Court). The gist of Plaintiff's complaint is that shortly after she agreed to enter into business with Defendant, he engaged in a deliberate pattern of conduct to cut her out of the business and keep all profits for himself. The facts as alleged by Plaintiff in her state court complaint are as follows:

(1) Plaintiff began the process of becoming a home health care provider in April, 2009. (St.Ct.C. ¶ 6, 7).

(2) In August, 2009, unbeknownst to Plaintiff, the identity of HHCC's resident agent was changed to Defendant. The registered office was 2925 E. Michigan Avenue, Ypsilanti, Michigan, the space leased by Plaintiff in April, 2009. (St.Ct.C.¶ 10).

(3) On December 15, 2009, Plaintiff and Defendant executed an Operating Agreement for HHCC. (St.Ct.C. ¶ 12). Soon thereafter, an application (the CMS 855-A application) was submitted to the CMS seeking certification of HHCC as a health care provider. The CMS 855-A application listed Defendant as the sole owner of HHCC with no mention of Plaintiff's 50% ownership.

(4) Early in 2010, Defendant contacted Plaintiff and stated that his son was ill and that Defendant was placing any development of HHCC on hold. (St.Ct.C. ¶ 17)

(5) While Plaintiff was operating under the assumption that nothing was happening with HHCC, Defendant took the following actions:

(a) On April 15, 2010, Defendant, acting as "sole owner" of HHCC entered into a three-year commercial lease agreement covering the same commercial office space already occupied by HHCC (the new lease running from 1/1/10 through 12/31/13). The locks on the office were changed and Plaintiff no longer had access to the business premises. (St.Ct.C. ¶ 23).

(b) Defendant held HHCC board meetings without any notice to her. In the meeting minutes, Plaintiff was identified as being "absent." (Adv. P. Complaint ¶ 25).

(c) Minutes of the March 26, 2010 meeting state that Plaintiff was not fulfilling her obligations to HHCC and that Plaintiff had failed to perform her obligations under the Operating Agreement. (Adv.P.Complaint ¶¶ 25-27).

(6) Plaintiff attempted to contact Defendant throughout 2010 to obtain information about HHCC. Plaintiff did not return her calls. (St.Ct.C.¶ 21)

(7) In February 2011, Plaintiff received a letter from Defendant's counsel stating that the Operating Agreement was void and rescinded, and that HHCC did not recognize in Plaintiff any ownership interest or any proprietary right to proceeds or revenue. (St.Ct.C. ¶ 22).

(8) Plaintiff attempted to obtain information about HHCC's operations. Defendant failed to provide any information sought. In a letter dated October 11, 2012, Defendant, through counsel, indicated that Plaintiff had "no ownership stake in Home Health Care Connections, is not a Member and is not entitled to any rights of a Member." (St.Ct.C. ¶¶ 24, 25).

Based on these allegations, Plaintiff's Complaint sought relief on five grounds: (1) fraud and/or willfully unfair conduct under the Michigan Limited Liability Act; (2) breach of contract; (3) breach of fiduciary duty; (4) conversion; and (5) unjust enrichment. The complaint sought damages in an unspecified amount.

Defendants were uncooperative in the state court litigation. On August 2, 2013, as a result of the Defendants' failure to respond to Plaintiff's first set of interrogatories and first request for production of documents, the state court judge entered an order compelling discovery and directing Defendants to provide responses by August 16, 2013. (Plaintiff's Ex. 6b).

In September, 2013, Defendants' counsel, Fausone Bohn, moved to withdraw for nonpayment of fees. Defendant continued to ignore discovery requests and on December 10, 2013, the state court entered an "Order for First Adjournment of Case Evaluation, Compelling Discovery, and Revising Scheduling Order." Among other things, the order directed Defendants

5

to produce five individuals (Muhammad Hanif, Adnan Hanif, Hamid Hussaid, Aamir Hussain and Abrar Hussain Hanif) for deposition no later than December 31, 2013 at HHCC's office. (Plaintiff's Ex. 6c). None of these parties ever appeared for a deposition.

On December 5, 2013, immediately prior to the entry of the aforementioned order, defendant Muhammad Hanif filed a voluntary chapter 7 bankruptcy petition. Included on Schedule B (personal property) is Defendant's ownership interest in HHCC valued at zero, "Debtor's CMS Medicare Certification for Business" valued at zero, HHCC's office equipment and furnishings valued at $1,000, and HHCC's business checking account with a balance of $2,484.35. The HHCC checking account and office equipment/furniture are exempted on schedule C pursuant to § 522(d)(5). Debtor/Defendant listed no priority claims. The only secured claim is a car. Schedule F includes a $26,000 "collection" account owed to Plaintiff as well as $7,487.80 owed to Mr. Hafeez, his attorney and various other unsecured credit cards and medical expenses. Total debt on schedule F is $42,126.80.

Schedule G (executory contracts) includes HHCC's commercial lease, which is listed as "month to month" and expires in April, 2018.

Schedule I indicates that Defendant is employed as a taxi driver with zero wages and salary but $518.50 in part time income from that job. Line 8a discloses $1,130.05 from "net income from rental property and from operating a business." A note at the bottom of the schedule states: "Debtor is the owner of a home health care company and due to unforseen circumstances debtor is not able to run the business for profit. Debtor has not received wages from the business since September 2013 and does not anticipate receiving wages from the business in the future as it is running at a loss."

6

Defendant's Statement of Financial Affairs disclosed the following income from employment or operation of business

| Amount | Source |
|--------|--------|
| $48,000.00 | 2013 Debtor Home Health Care Connection LLC Wages |
| $14,000.00 | 2012 Debtor Home Health Care Connection LLC Wages |
| $2,400.00 | 2011 Debtor Home Health Care Connection LLC Wages |
| $33,689.00 | 2012 Debtor Self Employment American Metro Car Mini Van Service |
| $57,589.00 | 2011 Debtor Self Employment American Metro Care Mini Van Service |
| $1,566.55 | 2013 YTD Debtor Taxi Service  Independent Contractor |
| $7,509.00 | 2012 Debtor Taxi Service Independent Contractor |
| $531,620.05 | 2013 YTD Debtor Home Health Care Connection LLC |
| $331,997.00 | 2012 Debtor Home Health Care Connections LLC |

On December 18, 2013, a Certificate of Dissolution for HHCC was filed with the Michigan Department of Licensing and Regulatory Affairs.  It was signed by Defendant.  The box checked for "reason for dissolution" indicated "upon the happening of an event specified in the Articles of Organization or operating agreement."  (Plaintiff's Ex. 6d).

On March 7, 2014, Plaintiff filed the present three-count adversary complaint alleging that Defendant's conduct gives rise to a nondischargeable claim in an unspecified amount pursuant to 11 U.S.C. § 523(a)(2)(fraud/false pretenses- Count I), § 523(a)(4) (fraud or defalcation in a fiduciary duty- Count II), and § 523(a)(6)(willful and malicious conduct - Count III).

On April 29, 2014, the parties filed a "Stipulation to Lift the Automatic Stay as to

7

Defendant Muhammad Hanif For the Sole Purpose of Determining Liability/Fraud in the Pending State Court Case in the 22nd Judicial Circuit Court, Washtenaw County, State of Michigan." (Adv. P. Dkt. No. 15).

After the parties returned to state court, Defendants' counsel, Thav Ryke, moved to withdraw as counsel for nonpayment of fees.

On August 18, 2014, neither defendant Hanif nor defendant HHCC appeared for the court ordered settlement conference.

In October, 2014, Plaintiff filed a second motion for entry of default judgment against both defendants, Muhammad Hanif and HHCC. Attorney Anthony Greene appeared on behalf of Defendants. The court granted Plaintiff's motion and scheduled a hearing on damages for January 8, 2015.

On January 8, 2015, the court entered a default judgment against defendants in the amount of $212,891.00.

On January 29, 2015, Defendants, now represented by attorney Kenneth Mains, filed a "Motion for New trial on Damages, Motion for Reconsideration and Other Relief from Judgment." Defendants argued they had been improperly denied their right to a jury trial and that a default judgment was too harsh a sanction for their conduct. They also accused Plaintiff of committing fraud on the court.

On February 11, 2015, following a hearing, the state court entered an order denying Defendants' motion for a new trial, motion for reconsideration and other relief from judgment. (Plaintiff's Ex. 6f).

On February 17, 2015, Plaintiff filed the present Motion for Summary Judgment.

Plaintiff asserts that the state court default judgment is entitled to full collateral estoppel effect and that the state court judgment is nondischargeable as alleged in the adversary complaint.

On February 17, 2015, Defendant filed a Motion for Summary Judgment. Defendant asserts that Counts I and II (non-dischargeability under §§ 523(a)(2) and (a)(4)) should be dismissed for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Defendant asserts that, as to Count III, Plaintiff is collaterally estopped from obtaining a judgment of nondischargeability under § 523(a)(6) (willful and malicious conduct) because the state court default judgment made no findings regarding intent.

## II.  Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. *See* 28 U.S.C. §§ 1334 and 157. Core proceedings include proceedings to determine dischargeability. 28 U.S.C. § 157(b)(2)(I).

## III.  Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

When a party attaches material outside of the pleadings to support a motion to dismiss, the court should convert the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) to one for summary judgment pursuant to Fed.R.Civ.P. 56. *See Wysocki v. Int'l Business Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir.2010). Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

In the present case, Plaintiff has clearly filed a Motion for Summary Judgment. Defendant's Motion, while captioned as a motion for summary judgment, cites to and argues the standard for dismissal under Fed. R. Civ. P. 12(b)(6). Because Defendant has attached materials outside of the pleadings (for example, the Operating Agreement), the Court will treat Defendant's Motion as a motion for summary judgment rather than a motion to dismiss.

# IV. **Analysis**

Both parties argue that the doctrine of collateral estoppel requires that this Court grant summary judgment as to them. The doctrine of collateral estoppel, also known as issue preclusion, prohibits relitigation of issues that have been adjudicated in a prior action. *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 (B.A.P. 9th Cir. 2007). The purpose of collateral estoppel is to protect parties from multiple lawsuits, to prevent the possibility of inconsistent decisions, and to conserve judicial resources. *Montana v. U.S.*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979)("Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."); *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 328 (1971) (it is no "longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue."). The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995). The doctrine of collateral estoppel applies in non-dischargeability litigation. *Grogan v. Garner*, 498 U.S. 279, 284–285 (1991).

When applying the principle of collateral estoppel, if the judgment was entered by a state court, the federal court is required, by the full faith and credit clause of the U.S. Constitution, to apply the forum state's law of collateral estoppel. The judgment in this case was rendered by the Washtenaw County Circuit Court. Thus, this Court must give the state court judgment the same preclusive effect that any Michigan state court would give the judgment. Under Michigan law,

collateral estoppel applies when:

> 1) there is identity of parties across the proceedings;
> 2) there was a valid, final judgment in the first proceedings;
> 3) the same issue was actually litigated and necessarily determined in the first proceeding; and
> 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Phillips v. Weissert (In re Phillips)*, 434 B.R. 475, 485 (B.A.P. 6th Cir.); *Hinchman v. Moore,* 312 F.3d 198, 202 (6th Cir. 2002) *citing Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) and *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)).

In bankruptcy court, the issue of whether collateral estoppel precludes a defendant from litigating his or her defenses to a nondischargeability action arises most frequently when the state court judgment was a default judgment. There is Sixth Circuit case law holding that collateral estoppel applies to bar subsequent litigation even when the first judgment is a default judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 322 (6th Cir. 1997). Collateral estoppel may apply even when the default is a "true" default, that is, the defendant fails to participate in the litigation in any manner. *McCallum v. Pixley (In re Pixley), 504 B.R. 852, 860 (Bankr. E.D. Mich. 2014); Barnes v. Jeduevine*, 718 N.W.2d 311, 315 (Mich. 2006)("[a] default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest."). *See also, Building Communications, Inc. v. Rahaim (In re Rahaim)*, 324 B.R. 29 (E.D. Mich. 2005). Collateral estoppel may also apply when the default judgment was entered as a discovery sanction. *See Kasishke v. Frank (In re Frank)*, 425 B.R. 435 (Bankr. W.D. Mich. 2010). Courts that have concluded that a default judgment satisfies the "actually litigated" and "necessarily determined" element of collateral estoppel have held that a default is

equivalent to an admission by the defaulting party as to all well pled allegations. *In re Frank*, 425 B.R. at 440; *Amer. Central Corp. v. Stevens Van Lines, Inc.*, 303 N.W.2d 234,236 (Mich. App. 1981).

There are an equal number of cases which hold that a default judgment cannot satisfy the "actually litigated and necessarily determined" requirement of collateral estoppel. *Dantone v. Dantone (In re Dantone)*, 477 B.R. 28, 36-37 (B.A.P. 6th Cir. 2012)(expressing doubt that Michigan law gives preclusive effect to a default judgment under the doctrine of collateral estoppel); *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889 (Bankr. W.D. Mich. 1996)("true default" judgments do not meet the "actually litigated" requirement and are not entitled to collateral estoppel effect under Michigan law); *Chamberlain v. Messer (In re Messer)*, 500 B.R. 875 (E.D. Mich. 2013).

Given the split in the case law within the Sixth Circuit, there is no easy answer to the question of when a state court default judgment should be given collateral estoppel effect in a subsequent nondischargeability proceeding in bankruptcy court. There are many factors to be considered before reaching a conclusion one way or the other. Those factors include: (1) the amount of participation by the defendant prior to the entry of the default; (2) whether the causes of action pled in the state court complaint are pled with sufficient specificity that the allegations, if deemed admitted, would support a finding of nondischargeability in the bankruptcy; (3) whether the default judgment was entered solely against the debtor or against multiple defendants; (4) whether the damages awarded in the default judgment are linked to specific causes of action or the judgment is for a lump sum amount; (5) if the damages are for a lump sum amount, but both nondischargeable and dischargeable causes of action were pled, whether

the amount of damages has been actually litigated and necessarily determined. In other words, is the total amount of the judgment nondischargeable even if some of the causes of action in the complaint would result in a judgment that was dischargeable in bankruptcy? It is this Court's view that if there has been any participation by the defendant, and the complaint pleads allegations that if deemed admitted would support a finding of nondischargeability, the default judgment may be given collateral estoppel as to liability. The murkier question is whether the total amount of damages must also be given collateral estoppel effect.

In considering all the factors set forth above, the Court concludes that on the facts of the instant case, the default judgment entered by the Washtenaw County Circuit Court collaterally estops Defendant from relitigating either the substantive issues of whether his conduct was fraudulent or willful and malicious, or the amount of damages. It is undisputed that Plaintiff has satisfied three of the four requirements for collateral estoppel. The parties in the state court action are identical to the parties in the bankruptcy proceeding, there is a final judgment in the state court case, and Defendant had a full and fair opportunity to litigate his defenses in the state court action. With regard to the third requirement, that Defendant have had a full opportunity to litigate his defenses, the Court notes that prior to filing bankruptcy, Defendant repeatedly failed to comply with Plaintiff's discovery requests. After this Court lifted the bankruptcy stay for the express purpose of allowing the state court to determine the issues of fraud and liability, Defendant refused to provide discovery or attend a settlement conference. A default judgment was entered because Defendant deliberately chose to stall and avoid discovery rather than litigate the merits of his defenses. Defendant had a full and fair opportunity to litigate his defenses in state court and failed to avail himself of that opportunity.

14

The only remaining requirement for collateral estoppel is the requirement that the factual allegations which would support a nondischargeability judgment must have been "actually litigated and necessarily determined" in the state court. In her nondischargeability complaint, Plaintiff alleges that the state court judgment should be nondischargeable under 11 U.S.C. §§ 523(a)(2), (4) and (6). In order to expedite the resolution of this matter, Plaintiff agreed to the dismissal of Count II of the Dischargeability Complaint, which seeks relief pursuant to 11 U.S.C. § 523(a)(4). This Opinion will therefore not address Count II, fraud in a fiduciary capacity. (*See* Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 11, n. 2).

## Nondischargeability under 11 U.S.C. § 523(a)(2)

Plaintiff first seeks a finding that her judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Under that section, a debt may only be excepted from discharge if the debt is "for money, property, [or] services . . . to the extent obtained by false pretenses, a false representation, or actual fraud. . . " To prevail on a claim under this section, a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998). *See also Digital Commerce Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 823 (W.D. Mich. 2004); *Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 618-19 (Bankr. S.D. Ohio 2011).

In Michigan, the following elements must be proved to establish fraud:

(1) The defendant made a material misrepresentation;

15

(2) It was false;
(3) The defendant knew it was false when made, or made it recklessly,
without knowledge of its truth, and as a positive assertion;
(4) It was made with the intention to induce reliance by the plaintiff;
(5) The plaintiff relied on it; and
(6) The plaintiff thereby suffered injury.

*Building Communications, Inc. v Rahaim (In re Rahaim)*, 324 B.R. 29, 36 (Bankr. E.D. Mich.

2005).

Accepting all of Plaintiff's allegations as true, does Plaintiff's complaint allege facts

which establish a basis for a nondischargeable judgment for fraud? In count I of the state court

complaint, alleging willful violation of the Michigan Limited Liability Act, Plaintiff makes the

following allegations:

(1) Early in 2010, Defendant Hanif contacted Plaintiff and stated that he could not fulfill
his obligations under the Operating Agreement at that time. (St.Ct.C. ¶ 17).

(2) In reliance on this statement Plaintiff accepted a job at Advance Home Health Care.
(St. Ct. C. ¶ 18).

(3) Throughout 2010, defendant Hanif continued to develop HHCC. He filed the
application and obtained certification by the Center for Medicare and Medicaid Services.
He negotiated a new lease for HHCC and changed the locks so that Plaintiff could not
access the premises. (St.Ct.C. ¶ 23). He failed to provide Plaintiff with notice of HHCC's
meetings, and he failed to respond to Plaintiff's inquiries regarding the status of HHCC.
(St.Ct.C. ¶ 29).

Paraphrasing Plaintiff's Complaint, defendant Hanif's statement regarding his inability to

fulfill his obligations under the Operating Agreement was a misrepresentation that led Plaintiff

to take alternative employment. Defendant's failure to provide Plaintiff with information about

HHCC's activities ultimately led Defendant to claim that Plaintiff had lost her membership rights

in HHCC (St.Ct.C. ¶ 29). By depriving Plaintiff of her membership interest in HHCC,

Defendant caused monetary damages to Plaintiff. Accepting Plaintiff's allegations as true,

16

Plaintiff's Complaint established grounds for a nondischargeable judgment based on fraud.

With regard to damages, Defendant argues that HHCC never made any money and therefore, Plaintiff should be estopped from claiming damages. There are two problems with Defendant's argument. First Defendant had the opportunity to litigate those issues in state court and failed to do so. Second, Defendant's argument regarding damages is not substantiated by his schedules. Based on Defendant/Debtor's statement of financial affairs, HHCC grossed $331,947 in 2012 and $531,620.04 in 2013. Because Defendant has never complied with discovery and has never provided Plaintiff with complete and accurate records regarding HHCC's assets and liabilities, Plaintiff has never been able to ascertain exactly what her share of distributions from HHCC could have been. However, this Court is satisfied that Plaintiff's state court complaint fully set forth all the elements of a cause of action for fraud. Plaintiff is entitled to a nondischargeable judgment under 11 U.S.C. § 523(a)(2)(A).

The trickier issue is whether the total amount of damages awarded to Plaintiff is nondischargeable. The state court judgment awarded Plaintiff a judgment in the amount of $212,891.00. The state court judgment did not specify how the damages were determined. On the facts of this case, the Court finds that the entire judgment is nondischargeable notwithstanding the state court's failure to specifically identify the causes of action which resulted in the judgment.

In concluding that the entire judgment is nondischareable, this Court agrees with the analysis set forth in *Kasishke v. Frank (In re Frank)*, 425 B.R. 435 (Bankr. W.D. Mich. 2010). In that case, the plaintiff, Kasishke, sued defendant Frank and two companies, Landtec and Water Management, LLC. Frank and Kaskshke were the only shareholders of Landtec and

Kasishke believed that Frank was diverting assets from Landtec to Frank's solely owned company Water Management, LLC. Kasishke filed a state court complaint alleging negligence, conversion and shareholder oppression in violation of MCL § 450.1489. Defendants responded to the lawsuit but ultimately a default judgment was entered against the defendants. Frank filed for bankruptcy and Kasishke filed an adversary proceeding seeking a nondischargeable judgment based on the collateral estoppel effect of the state court default judgment. The debtor, Frank, argued that because the state court judgment did not distinguish between damages for claims which would be dischargeable in bankruptcy (negligence) and claims which would be nondischargable (conversion and shareholder oppression), the state court judgment could not be given preclusive effect in a nondischargeability proceeding. In a well reasoned opinion, the court disagreed.

The court first held that even when a default judgment is entered as a discovery sanction, the default judgment satisfies the "actually litigated" requirement of collateral estoppel. The court stated that:

> federal courts interpreting Michigan law have repeatedly held that when a so-called "default" judgment is entered after a defendant has filed an answer or taken part in the lawsuit, the doctrine of collateral estoppel is properly applied, and the issues in the state court case should be regarded as "actually litigated." *See Building Communications, Inc. v. Rahaim (In re Rahaim)*, 324 B.R. 29 (Bankr.E.D.Mich.2005); *Robinson v. Callender (In re Callender)*, 212 B.R. 276 (Bankr.W.D.Mich.1997); *Sonographics, P.C. v. Khullar (In re Khullar)*, 139 B.R. 428 (Bankr.E.D.Mich.1992); see also *Bursack*, 65 F.3d at 54 (to the extent a defendant retains an attorney, files an answer, and participates in discovery, the "actually litigated" requirement is met).

*In re Frank*, 425 B.R. at 439-440. Further, in Michigan,

> it is an established principle that "a default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." *Wood v. DAIIE*, 413 Mich. 573, 578, 321 N.W.2d 653 (1982); see also

18

> *American Central Corp. v. Stevens Van Lines, Inc*., 103 Mich.App. 507, 512, 303
> N.W.2d 234 (1981) ("Entry of a default is equivalent to an admission by the
> defaulting party as to all well-pleaded allegations.").

*Id.* at 440.

The *Frank* court went on to discuss whether the amount of damages had been

"necessarily determined" given that the judgment did not specify the ground on which damages

had been awarded. The *Frank* court reviewed the Restatement (First) of Judgments § 68, Sixth

Circuit law, and Michigan law and concluded that "if the trial court rests its judgment on two

grounds, each of which is independently adequate to support it, the judgment is conclusive as to

both. . . " *In re Frank*, 425 B.R. at 440-442; *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d

900, 910 (6th Cir. 2001)("where one ground for the decision is clearly primary and the other

secondary, the secondary ground is not necessary to the outcome for the purpose of issue

preclusion"); *Amalgamated Transit Union, Loc. 1564 v. Southeastern Mich. Transp. Auth.*, 473

N.W.2d 249 (Mich. 1991)("if the trial court rests its judgment on two grounds, each of which is

independently adequate to support it, the judgment is conclusive as to both. . . "); *Dombrowski v.

Jay Dee Contractors, Inc.*, 2010 WL 293069 (Mich. App.)(the first Restatement rule represents

the better reasoned rule because it is consistent with the purposes of collateral estoppel;

collateral estoppel extends to alternate grounds for a prior decision).

Based on its analysis of the relevant law, the *Frank* court found that the alternative

grounds pled in Kasishke's state court complaint were each "necessarily determined" and

essential to the judgment, therefore the entire judgment was entitled to preclusive effect in a

nondischargeability action. *In re Frank,* 425 B.R. at 442.

This Court agrees with the conclusion of the *Frank* court with one caveat. In order for the

19

judgment to satisfy the "necessarily determined" requirement of collateral estoppel, the state court complaint must have pled fraud (or an intentional tort or conversion) with sufficient specificity that accepting the factual allegations as true, the plaintiff could have obtained a judgment on that cause of action. It is this Court's experience that many state court complaints are not well pled, particularly when the underlying cause of action is breach of contract. It is frequently difficult to discern what causes of action are actually being pled and what specific facts support each cause of action. In such a case, this Court would not give preclusive effect to the default judgment because the facts necessary to support a nondischargeable judgment are not pled with sufficient particularity.

In the instant case, however, Plaintiff's complaint stated factual allegations which establish a cause of action for fraud under both state law and 11 U.S.C. § 523(a)(2)(A). Defendant made fraudulent misrepresentations to Plaintiff, she acted in reliance on those misrepresentations, and she suffered damages as a result of Defendant's misrepresentations. Although Plaintiff's state court complaint also pled breach of contract and unjust enrichment, causes of action which would not give rise to a nondischargeable judgment in bankruptcy, those causes of action are so intertwined with Defendant's fraud that there would be no way for the state court or this Court to parse out a specific dollar amount for each cause of action.

Because Plaintiff's complaint pled fraud with sufficient particularity, the issue of fraud has been actually litigated and Defendant's fraudulent conduct was essential to the state court judgment. Plaintiff has established all of the elements for the judgment entered in state court to be given collateral estoppel effect in this Court.

This Court notes that the policy reasons underlying the doctrine of collateral estoppel

also

support this Court's ruling that the entire state court judgment is nondischargeable. Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless relitigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Defendant in the instant case had the opportunity to litigate his defenses in state court both before and after he filed for bankruptcy. Defendant repeatedly failed to comply with orders compelling discovery and failed to attend a settlement conference. It was Defendant's failure to comply with orders compelling discovery that led to the entry of the default judgment. Defendant now asks that the default judgment be given collateral estoppel effect in *his* favor. To grant such a request would be tantamount to sanctioning Defendant's conduct.

Plaintiff has established all of the requirements of collateral estoppel. Plaintiff is entitled to a nondischargeable judgment for fraud in the amount of $212,891.25 pursuant to 11 U.S.C. §523(a)(2)(A).

**Nondischargeability under 11 U.S.C. § 523(a)(6)**

Plaintiff has also alleged that she is entitled to a nondischargeable judgment under 11 U.S.C. § 523(a)(6). That section states:

> (a) A discharge under section 727,1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

In order to establish non-dischargeability of debt based on willful and malicious injury, a court must make separate findings that the resulting injury was both "willful" and "malicious." *Eberhardt v. Comerica Bank*, 171 B.R. 239, 244 (Bankr. E.D. Mich. 1994) (*citing* 11 U.S.C. §

523(a)(6)) (emphasis added). The absence of one creates a dischargeable debt. *Markowitz v.*

*Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). The Supreme Court has

explained that for a debt to be non-dischargeable under § 523(a)(6), the "'actor [must] intend

"the consequences of an act," not simply "the act itself."'" *Kawaauhau v. Geiger*, 523 U.S. 57,

61 (1998)(quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)). The Sixth

Circuit Court of Appeals has further qualified that a willful and malicious injury occurs only if

the debtor (1) desires "to cause the consequences of this act, or" (2) "believes those

consequences are substantially certain to result from it." *Markowitz*, 190 F.3d at 464.

A judgment arising from the intentional tort of conversion may give rise to a

nondischargeable debt under § 523(a)(6).

> Conversion may give grounds to nondischargeability under § 523(a)(6) if
> the conversion is both (1) willful and (2) malicious. *Davis*, 293 U.S. at 332, 55
> S.Ct. 151; *Eberhardt v. Comerica Bank*, 171 B.R. 239, 244 (E.D.Mich.1994).
> Accordingly, "not every tort judgment for conversion is exempt from discharge."
> *Geiger*, 523 U.S. at 63–64, 118 S.Ct. 974. A court has to consider the
> circumstances surrounding the conversion to determine if it falls within the scope
> of this exception. *Davis*, 293 U.S. at 332, 55 S.Ct. 151. An innocent or technical
> conversion, such as an unauthorized assumption of dominion, without more will
> not fall within the purview of § 523(a)(6). *Id.*

> Under Michigan law, conversion is "any distinct act of domain wrongfully
> exerted over another's personal property in denial of or inconsistent with the
> rights therein." *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 458
> (6th Cir.2003) (quotation and citations omitted).

*Becton, Dickinson and Co. v. Sterline (In re Sterling)*, 479 B.R. 444, 453 (Bankr. E.D. Mich.

2012)

Plaintiff's state court complaint includes well pled allegations which indicate that

Defendant's actions in excluding Plaintiff from HHCC and depriving her of any and all

opportunity to participate in and develop HHCC, were deliberate and on-going over a period of

time. That pattern of conduct could lead to only one result– Plaintiff's exclusion from the business. That result was entirely foreseeable and substantially certain to occur. Plaintiff also specifically alleged that Defendant unlawfully and intentionally converted her membership interest in HHCC for his own benefit and that Defendant's conversion of her interest resulted in damages. Accepting these allegations as true, Plaintiff is entitled to a nondischargeable judgment for conversion.

Defendant's response to Plaintiff's argument that she is entitled to a nondischargeable judgment under 11 U.S.C. § 523(a)(6) is that the state court failed to make findings regarding conversion because the judge expressly declined to award treble damages. Defendant misconstrues the nature of treble damages.

As a general rule, under Michigan law the measure of damages for common law conversion is the fair market value of the property converted at the time of the conversion. *In re CMC Telecom, Inc*., 383 B.R. 52, 65 (Bankr.E.D.Mich.2008). Aside from the common law remedy, Michigan, by statute, authorizes treble damages as an additional remedy. M.C.L. § 600.2919(a) provides:

> (1) A person damaged as a result of either or both of the following **may** recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
>> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>>
>> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or
remedy the person may have at law or otherwise.

Mich. Comp. Laws § 600.2919a (emphasis added).  As set forth in the statute, treble damages are

awarded *in addition* to other remedies.  They are not awarded automatically.  An award of treble

damages " is within the Court's discretion based on what is fair under the circumstances." *In re*

*Stewart*, 499 B.R. 557, 570 (Bankr. E.D. Mich. 2013).

In the present case, the fact that the state court judge declined to award treble damages

for conversion does not imply that the state court found no conversion.  To the contrary, a review

of the transcript of the January 8, 2015 hearing on damages discloses that the state court did, in

fact, find conversion and awarded Plaintiff damages on that count.  It is unclear why treble

damages were denied, but that denial does not negate the court's conclusion that some damage

award for conversion was appropriate.

Plaintiff's state court judgment is nondischargeable under § 523(a)(6).

## V.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted and

Defendants' Motion for Summary Judgment is denied.  Plaintiff's state court judgment in the

amount of $212,891.00 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (a)(6).

Signed on April 30, 2015

_____
            /s/ Marci B. McIvor
            Marci B. McIvor
            United States Bankruptcy Judge
